**AKERMAN LLP**
Ellen S. Robbins (SBN 298044)
ellen.robbins@akerman.com
633 West Fifth Street, Suite 6400
Los Angeles, CA 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

Jeffrey B. Pertnoy [*Admitted Pro Hac Vice*]
jeffrey.pertnoy@akerman.com
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Tel: (305) 374-5600
Fax: (305) 374-5095

Attorneys for Defendant
Colourpop Cosmetics, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER FERRELL, on behalf of herself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COLOURPOP COSMETICS, LLC.,<br><br>Defendant. | CASE NO. 2:25-cv-01324<br><br>The Hon. Sherilynn Peace Garnett<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Complaint Filed: February 14, 2025 |

82125862;1

## I. INTRODUCTION

Plaintiff Amber Ferrell ("**Plaintiff**") asserts that defendant Colourpop Cosmetics, LLC ("**Defendant**") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et. seq.* ("**TCPA**") by sending her marketing text messages while she was on the "National Do Not Call Registry." Defendant's records show that Plaintiff agreed to arbitrate this dispute when she agreed to the terms of use ("**Terms**") on Defendant's website where she voluntarily input her phone number, double opted in to the subject text messages, and specifically requested to receive the texts she now complains about.

Plaintiff filed an Opposition to the Motion asserting that she never visited the website or agreed to the Terms, never double opted in to the messages, and is not bound by the arbitration agreement. Notwithstanding, the Court should still compel arbitration as there are significant questions of credibility regarding the assertions made by Plaintiff, Plaintiff admits that she had <u>not</u> placed her number on the Do Not Call Registry when she first received texts from Defendant, and the evidence shows Plaintiff never responded with STOP to cease any text messages from Defendant.

Alternatively, if the Court finds that arbitration is not applicable, the Court should nevertheless dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## II.   THE COURT SHOULD COMPEL ARBITRATION

Even considering Plaintiff's Opposition, arbitration should still be compelled. Courts often compel arbitration even in the face of conflicting evidence regarding whether a TCPA plaintiff agreed to terms containing an arbitration agreement. *See, e.g., Hill v. ActiveProspect, Inc.*, No. 20-cv-01351-JGB-KK, ECF No. 90, at 8-9 (C.D. Cal. July 16, 2021) (compelling arbitration in TCPA case despite plaintiff's declaration stating that she did not click the button to consent to the terms that included the arbitration agreement, and compelling arbitration even though there was a "clash between Plaintiff's [declaration and] screen capture video and Defendant's" evidence); *Dobbs v. Health IQ Ins. Servs., Inc.*, No. 21-cv-05276-JLS, ECF No. 14, at 7-9 (E.D. Pa. July 27, 2022) (compelling arbitration even where plaintiff's declaration alleged that "he did not enter into any agreement with Defendant," and finding that those "naked assertions" were "insufficient to lead the Court to conclude otherwise").

1

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS**

82125862;1

      Moreover, Plaintiff's Declaration and Opposition raise issues that render her statements suspect and conflicting. For example, Plaintiff asserts that the text messages at issue in this case "are addressed to a person named Shana." Opposition, at 7; Declaration, ¶ 5. But they are not. The messages embedded in the Complaint do not say the name "Shana" anywhere. In fact, they do not contain any name. *See* Am. Compl., ¶ 15. Thus, Plaintiff's credibility is questionable, and the Opposition's reference to someone named "Shana" raises the question of whether this litigation was manufactured in conjunction with someone named "Shana."

      Similarly, Plaintiff's Opposition contains contradicting statements about the text messages themselves. Plaintiff first asserts that she received messages "beginning in or around October 2024." *See* Opposition, at 3. Yet, her declaration (ECF No. 28-1) asserts that the text messages started in August 2024. *See* Declaration, at ¶ 6. And significantly, despite apparently receiving text messages in August 2024, Plaintiff did not put her number on the national Do-Not-Call Registry until September 12, 2024, more than a month after the text messages allegedly began. *Id.*, ¶ 2. Moreover, Plaintiff did not respond to any of the messages with "STOP" or otherwise request that they cease. *See* ECF 26-2, Sega Decl., ¶ 8. She instead, apparently, chose to let the messages continue and then place her number on the Do-Not-Call Registry so that she could attempt to bring a TCPA claim. By Plaintiff's own admission, when she began receiving messages in August 2024 she was not on the Do-Not-Call Registry. She placed herself on it thereafter, potentially in an attempt to bring the claims at issue here, despite never texting back STOP. Tellingly, Plaintiff's declaration is absolutely silent regarding when she allegedly came into possession of the phone number at issue in this case.

      The fact is, Defendant's and Attentive's records show that on September 20, 2023, there was a visit by the owner of Plaintiff's phone number to Defendant's website (https://colourpop.com) and an agreement to the hyperlinked Terms, which contains an arbitration agreement. *See generally*, Shuler Decl. and Sega Decl. (ECF Nos 26-1 and 26-2). Plaintiff's conclusory declaration should not stand in the way of enforcement of Defendant's and Attentive's records, which both show that Plaintiff agreed to arbitrate. In accordance with the "liberal federal policy favoring arbitration agreements," *Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), the Court should

2

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS**

82125862;1

"rigorously enforce" the agreement here and compel arbitration." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted). The standard for demonstrating arbitrability is **not high**," *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), and "any doubts concerning the scope of arbitrable issues should be resolved ***in favor of arbitration***." *Moses*, 460 U.S. at 24-25. (emphasis added). The Court should compel arbitration.

At the very least, the threshold issue of arbitrability should be decided by the arbitrator, not the Court. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529-30 (2019) (stating that the "court [has] no power to decide the arbitrability issue" when the contract "delegates the arbitrability question to an arbitrator"). Here, there is an express delegation to the arbitrator. *See* Shuler Decl., ¶ 26. And, the arbitration agreement's incorporation of the AAA rules require that the arbitrator, and not the court, decide the threshold issue of arbitrability.

### III.    ALTERNATIVELY, THE COURT SHOULD DISMISS THE COMPLAINT

The Court should also dismiss Plaintiff's Complaint because the text messages were sent to her cellular phone (Am. Compl., ¶ 9), and a cell phone is not a "residential" phone number as a matter of law, even if Plaintiff alleges in conclusory fashion that the cell phone is her "residential number." *Id.*, ¶ 11. In addition to all of the reasons for dismissal set forth in the Motion itself, dismissal is also warranted under the Supreme Court's recent decision in *McLaughlin Chiropractic Assoc., Inc., v. McKesson Corp., et al.*, 600 U.S. ___, 2025 WL 1716136 (June 20, 2025), which came down after the filing of the Motion (but before Plaintiff's Opposition was filed). *McLaughlin* held that:

> The Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct. Here, therefore, the District Court should interpret the TCPA under the ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.

*McLaughlin*, 2025 WL 1716136, at *4.

The *McLaughlin* decision effectively nullifies most of Plaintiff's argument that a cell phone user qualifies as a "residential telephone subscriber" under Section 227(c) of the TCPA, which is the very question at issue here. Following *McLaughlin*, this Court should analyze the TCPA statutory

3

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS**

82125862;1

language itself, and not rely on the FCC's interpretations as binding (including specifically, the 2003 FCC Order that interpreted "residential telephone subscriber" to include cell phone users (*see In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 18 FCC Rcd. 14014 (July 3, 2003))). Indeed, *McLaughlin* now requires the Court to independently construe Section 227(c) to determine whether cell phone users like Plaintiff qualify for protection under the TCPA for the claim asserted here. Based on the TCPA's plain text and cases performing the requisite statutory interpretation, cell phone users do not qualify as "residential telephone subscribers" under Section 227(c).

Plaintiff's Opposition relies heavily on *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022). But *Chennette* is now of little help to Plaintiff. There, the Court held that cell phone users are "residential telephone subscribers" under Section 227(c), but in so doing, squarely "reli[ed] on the FCC's regulations and orders."  The Court did not conduct its own independent analysis.  *Id.* (noting that "*[i]n the view of the FCC*, expressed in the 2003 TCPA Order, 'it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections . . . .'") (emphasis added).  Tellingly, the *Chennette* Court acknowledged that it did not conduct its own analysis, instead stating that if the FCC changed its stance in the future, it would again "of course defer to its interpretation." *Id.* at 1225.  *Chennette* pre-dates both *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) and *McLaughlin*, which now both require the Court to conduct its own statutory analysis, and <u>not</u> rely "mechanically" on FCC interpretations and orders and give them "binding deference."  Indeed, "agency interpretations" and "delegations of authority" do not relieve courts of their "obligation to independently interpret the statute." *Loper*, 603 U.S. at 400.

Independently conducting that analysis without relying on the FCC's interpretations, as the Court is now required to do, should lead the Court to a clear result: that Section 227(c) of the TCPA does not cover text messages to cell phone users.  The analysis is clear.

By its plain terms, the statute sued under (47 U.S.C. § 227(c)) applies to residential phone subscribers only, to the exclusion of cell users.  For example, Section 227(c)(1) authorizes the creation of the national do-not-call registry in order "to protect *residential* telephone subscribers' privacy

4

rights" and "*residential* subscribers who object to receiving telephone solicitations[.]" 47 U.S.C. §§ 227(c)(1), (c)(3) (emphasis added). Section 227(c)(2) likewise refers to "residential telephone subscribers" only. *See* 47 U.S.C. § 227(c)(2). Based on the plain language of the TCPA itself, Section 227(c) only restricts calls to "residential" telephones, not cell phones. Indeed, other sections of the TCPA specifically reference prohibitions related to cell phones. *See, e.g.,* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting calls made using an automatic telephone dialing system or an artificial or prerecorded voice to phone numbers assigned to a "cellular telephone service"). Section 227(c) does not do so.

As set forth in the Motion, the statute treats residential and cell phones differently. For example, 47 U.S.C. § 227(b)(1)(A)(iii) prohibits calls made using "an artificial or prerecorded voice" to cell phones, but a separate provision, 47 U.S.C. § 227(b)(1)(B) prohibits calls to "an artificial or prerecorded voice" to residential telephone lines. Why separate them if they were to be treated the same? It is thus telling that 47 U.S.C. § 227(c) restricts calls to residential telephone subscribers, but is silent on cell phones. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. US*, 464 U.S. 16, 23 (1983); *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015) ("Where Congress knows how to say something but chooses not to, its silence is controlling.").

While the 2003 FCC Order is itself no longer binding on this Court, the mere issuance of that Order does provide insight and guidance, as it led to the enactment of 47 C.F.R. § 64.1200(e), to expressly prohibit calls to wireless numbers (which did not exist before). This confirms that even the FCC itself understood that cell/wireless lines were different, and should be treated differently, under the TCPA. Otherwise, there would have been no need for the enactment of § 64.1200(e).

Based on the statutory text itself, there can be no doubt that Congress only created a cause of action for *residential* telephone subscribers under § 227(c)(5), not cell phone users. *See* 47 U.S.C. §§ 227(c)(1), (5). Pursuant to *McLaughlin*, courts analyzing the "clear text of the TCPA" have concluded the same. *See, e.g., Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023) (stating that "the FCC's interpretation at issue does not preclude this Court

5
**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS**

82125862;1

from applying the clear text of the TCPA," that "structure and language of the TCPA controvert coverage of cell phones," that "cell phones do not present the same concerns as residential telephones," that "the authority rests with Congress to amend the TCPA and bring cell phones within its protections," and holding that "[t]he FCC's rulemaking authority under section 227(c) extends only to unwanted telephone solicitations directed at 'residential telephone subscribers'" and "does not extend to cell phones"); *see also Cunningham v. Sunshine Consulting Grp.*, LLC, No. 3:16-cv-2921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018) (focusing its analysis on the language of the statute itself and holding that "the language of the TCPA specifically provides that the regulations implemented pursuant to Subsection 227(c) concern only 'the need to protect residential telephone subscribers' privacy rights" and thus, do not apply to cell phones). As cited in the Motion, other courts have reached the same conclusion.

Perhaps the clearest case, however, is *Turizo v. Subway Franchisee Adver. Fund Trust Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022), where Judge Ruiz analyzed the precise section of the TCPA at issue here and concluded that the FCC's 2003 Order "overstepped its rulemaking authority because Congress authorized the FCC to create a registry for 'residential subscribers' but not wireless or cellular subscribers. Judge Ruiz correctly found that "by presuming that any wireless number on the DNC Registry qualifies as 'residential,' the FCC expands section 227(c)(5)'s right of action to cellular telephone subscribers—without any congressional grant of authority to do so." *Id.*, at 1341. Judge Ruiz, however, found that he was without authority to review a final order of the FCC, and was thus bound by it. *Id.* Judge Ruiz discussed The Hobbs Act as a basis to refuse to enforce the FCC's 2003 Order. But following *Loper* and *McLaughlin*, Judge Ruiz's analysis, which found that the 2003 FCC Order was "an unauthorized expansion of the private right of action for violations of the TCPA's do-not-call provision" to cell phones (*id.*, at 1342), should now carry the day. In other words, the *Turizo* Court approved of the exact analysis Defendant advances here:

> Defendant argues that the FCC overstepped its rulemaking authority because Congress authorized the FCC to create a registry for "residential subscribers," but not wireless or cellular subscribers… In support of its position, Defendant points out that the text of the TCPA

6
**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS**

82125862;1

distinguishes between "residential" and "cellular" telephone lines. *Id.* at 3 (comparing 47 U.S.C. § 227(b)(1)(A)(iii), which concerns prerecorded calls to "cellular" telephone numbers, with 47 U.S.C. § 227(b)(1)(B), which concerns prerecorded calls to "residential" numbers). Thus, Defendants argue that Congress intentionally omitted cellular telephone numbers from section 227(c)(3)'s grant of rulemaking authority to the FCC with respect to the DNC Registry. The undersigned agrees with Defendant. The TCPA clearly draws a distinction between cellular telephones and residential telephones. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting certain prerecorded calls to "any telephone number assigned to a ... cellular telephone service"), *with id.* § 227(b)(1)(B) (prohibiting the same prerecorded calls to "any residential telephone line"); *see also id.* § 227(b)(2)(H) (permitting the FCC to limit the number and duration of debt collection calls made to a number assigned to a "cellular telephone service," but omitting any reference to debt collection calls made to residential telephone lines). Considering Congress knew of cellular telephones—and in fact referenced cellular telephones as distinct from residential telephones throughout the TCPA—**a proper interpretation of the statute would conclude that Congress intentionally omitted any reference to cellular telephones in section 227(c)**… Thus, when Congress granted the FCC authority to create the DNC Registry via section 227(c)(3), Congress intentionally withheld from the FCC any authority to create a registry that included cellular telephone numbers. **Consequently, the protections offered to numbers on the DNC Registry,** *see* **47 C.F.R. § 64.1200(c)(2), would not apply to cellular telephone numbers, and Plaintiff's claim would be foreclosed.**

…

As pointed out by Defendant, the FCC's assumptions as to congressional intent should not suffice to create an entirely new private right of action for cellular telephone subscribers. Indeed, section 227(c)(5) provides a private right of action for those on the DNC Registry who receive more than one unsolicited telephone call from the same entity within a twelve-month period. 47 U.S.C. § 227(c)(5). And by its very terms, the DNC Registry's protections apply to "residential telephone subscribers." *Id.* § 227(c)(1). But by presuming that any wireless number on the DNC Registry qualifies as "residential," the FCC expands section 227(c)(5)'s right of action to cellular telephone subscribers—without any congressional grant of authority to do so. Accordingly, the undersigned agrees with Defendant's arguments regarding the TCPA.

*Turizo*, 603 F. Supp. 3d at 1340-42.

Accordingly, the Court here should conclude that Plaintiff has failed to state a claim because she is not a "residential telephone subscriber" under the clear language of the TCPA.

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS**

82125862;1

## IV. PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF

Nothing in the Opposition changes the fact that Plaintiff's Complaint merely refers to past conduct from 2024 and January 2025 (Am. Compl., ¶¶ 14-15), but it is devoid of allegations showing threat of future texts, which Plaintiff does not allege are continuing, or continued beyond when she last received them. Thus, Plaintiff has not made and cannot make a showing of a threat of future harm or repeated injury. Under long-standing Supreme Court precedent, Plaintiff lacks standing to seek injunctive relief. Nothing in the Opposition changes that analysis. Without a threat of future harm, nor any allegations from which the Court could infer the same, Plaintiff lacks standing to seek injunctive relief.

## V. PLAINTIFF'S REQUEST FOR TREBLE DAMAGES SHOULD BE DISMISSED

Similarly, Plaintiff's Opposition does little to rebut or distinguish the legion of cases cited in the Motion dismissing or striking requests for treble damages at the pleadings stage of a TCPA case where the complaint, like here, concludes without support that violations of the TCPA were "willful or knowing," giving rise to treble damages. *See* Am. Compl., ¶¶ 34, 36. There are no factual details to support a conclusion that there were any willful or knowing violations; rather the complaint consists merely of bare, conclusory assertions. If her claims survive, Plaintiff's request for treble damages should be stricken.

## VI. THE COURT SHOULD STAY DISCOVERY WHILE THE MOTION IS PENDING

As set forth in ColourPop's Motion to Stay contemporaneously filed with the Motion, the Court stay discovery and further activity in this case pending ruling on this Motion.

## VII. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion to compel Plaintiff to arbitrate her claim against Defendant on an individual basis or, in the alternative, dismiss Plaintiff's claim.

| | | |
|---|---|---|
| DATED: July 16, 2025 | | **AKERMAN LLP** |
| | By: | */s/ Jeffrey B. Pertnoy* |
| | | Ellen S. Robbins |
| | | Jeffrey B. Pertnoy (*Admitted Pro Hac Vice*) |
| | | Attorneys for Defendant |
| | | Colourpop Cosmetics, LLC |